## THE DREAMLAND.

(District Court, E. D. New York. December 31, 1906.)

COLLISION—FAULT—EVIDENCE.

In a libel for collision between a tug and a steamship, evidence *held* to require a finding that both vessels were at fault; the tug for navigating too near to the shore, and the steamer for throwing her stern into the stream without a lookout astern to determine whether the lateral motion of the stern to port would interfere with the navigation of another vessel.

John F. Foley, for libelant.
Morris & Whitehouse, for claimant.

THOMAS, District Judge. The tug Magnet, with a barge alongside, was approaching the Battery, while the tide was flood, when the excursion steamer Dreamland crossed well ahead of her bow, for the purpose of making a landing at her station at the Battery. She took her position with her bow pointing westerly, but was unable to make her landing immediately, because another excursion boat, the Rosedale, was lying at the dock. The Rosedale was heading easterly, and after some minutes went out under the stern of the Dreamland, and, upon the exchange of suitable signals, crossed the bow of the

Magnet, who had reduced her speed and ported her helm, for the purpose of allowing this maneuver. Thereafter the Magnet steadied her helm and started ahead, but her starboard bow came in collision with the stern of the steamer Dreamland.

The contention of the captain of the Magnet is that the Dreamland was lying several hundred feet off in the river, with her bow pointed to the dock, and that she was backing without a stern lookout, and without signals, at the time the collision occurred, although the Magnet blew her alarm whistles. The evidence of the Dreamland is that she had been lying about parallel with her dock, and holding herself against the tide, to allow the Rosedale to go out, and that the tide carried her astern, whereupon she went forward; that this was repeated once or twice, but that at the time of the collision she was not backing, but ported her helm to throw her bow in, under the influence of the tide.

This is one of the cases where the vessels were so closely related in distance that it is difficult to determine the exact fact. But upon the whole testimony it is concluded that the Dreamland was not pointing to her dock in the manner described by the libelant, but was lying much closer to the dock; that the Magnet herself was navigating much closer to the dock than she was privileged to do, and that porting her helm carried her still further toward the Dreamland; that, when the Rosedale had passed the bow of the Magnet, the latter went ahead, so as to present her starboard side to the stern of the Dreamland; and that the Dreamland, in attempting to throw her bow toward the dock, necessarily carried her stern farther into the stream, whereby the accident happened.

This finding brings both vessels in fault; the Magnet for navigating so near to the shore, and the Dreamland for throwing her stern into the stream without a lookout at the stern to determine whether such lateral motion of the stern to port would interfere with the navigation of another vessel. There had been a lookout on the stern of the Dreamland; but after the Rosedale passed he went forward before the Magnet came up, leaving no lookout at the stern of the vessel. This explanation of the accident is the most probable that can be gathered from the evidence, and seems to reconcile the conflicting statements of the witnesses.

The damages and costs will be divided.